Filed 5/24/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SANDRA DIAZ et al., | B280846 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC542720) |
| v. | |
| GRILL CONCEPTS SERVICES, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. John Wiley, Jr., Judge. Affirmed.

Stokes Wagner, Arch Y. Stokes, Peter B. Maretz, Shirley Banner Gauvin, and Jacqueline A. Godoy for Defendants and Appellants.

Hadsell Stormer & Renick, Randy R. Renick, Cornelia Dai, and Springsong Cooper for Plaintiffs and Respondents.

\* \* \* \* \* \*

An employer that does not pay its employees the wage required by law when they quit or are fired is liable for *both* the underpayment of wages *and*, if the failure to pay is "willful," a "waiting time" penalty of up to 30 days' wages. (Lab. Code, §§ 203, subd. (a), 1194, subd. (a).) This appeal presents two questions regarding these "waiting time" penalties: (1) Is an employer's failure to pay "willful" when the employer (a) suspects the required wage has gone up but continues paying the old wage after halfheartedly investigating its suspicions, and (b) later makes an unreasonable argument that the wage law is unconstitutionally vague; and (2) Does a trial court have the discretion, on equitable grounds, to relieve an employer from having to pay waiting time penalties? We conclude that the answer to the first question is "yes," and the answer to the second question is "no." Accordingly, we affirm the trial court's order finding the employer liable for waiting time penalties in this case.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

In April 2010, defendants Grill Concepts Services, Inc. and Grill Concepts, Inc. (collectively, Grill Concepts) opened a Daily Grill restaurant (the restaurant) near the LAX Airport. From that date until June 2014, Grill Concepts employed approximately 200 people at the restaurant as servers, bussers, hosts, cooks, and in other non-managerial positions. By June 2014, 83 of those employees had quit or been fired.

The restaurant was located within the LAX Westin. During that time period, the LAX Westin was located within the Airport Hospitality Enhancement Zone (the Zone) designated by

2

the City of Los Angeles.[1]

The Los Angeles City Council had passed an ordinance creating the Zone in 2007 (the ordinance). (L.A. Ord. No. 178,432, codified at L.A. Mun. Code, §§ 104.101 et seq.) The ordinance defined the Zone to be geographically coextensive with the "Gateway to Los Angeles (Century Corridor) Property Business Improvement District." (L.A. Mun. Code, § 104.103.A.) The ordinance obligated the City to make efforts to promote the businesses within the Zone in a number of ways, including by marketing those business, by providing workforce training and development, by subsidizing power rates, and by improving the streets and waste management system. (*Id.*, § 104.103.B.) In exchange, the ordinance required "Hotel Employers" within the Zone to pay "Hotel Workers" a "living wage" that was higher than the minimum wage required by state law. (*Id.*, §§ 104.104, 104.106.)

When the restaurant first opened, the ordinance required hotel employers to make annual adjustments to the living wage on January 1 of each year that were keyed to the Consumer Price Index for Urban Wage Earners and Clerical Workers in Los Angeles-Riverside Counties. (L.A. Mun. Code, §§ 104.104.A, 104.106.) On June 9, 2010, the City Council amended the ordinance, and that amendment took effect on July 24, 2010. The amendment required that the annual adjustments to the living wage be made on July 1 of each year, and that they be keyed to

1    In October 2014, the Los Angeles City Council enacted a Citywide Hotel Worker Minimum Wage Ordinance that extended the Zone's "living wage" law to all hotels *throughout* the City (See L.A. Ord. No. 183,241), thereby eclipsing the ordinance at issue in this appeal.

3

the annual increase in retirement benefits paid to members of the Los Angeles City Employees Retirement System that would be set forth in a bulletin promulgated each year by the City's Bureau of Contract Administration. (L.A. Mun. Code, §§ 104.104.A, 104.116, 184.09; L.A. Admin. Code, § 10.37.2, subd. (a).) The amendment resulted in larger annual adjustments to the living wage.

Because the restaurant's employees were "hotel workers" within the meaning of the ordinance, Grill Concepts paid them a living wage. Until June 2014, however, Grill Concepts paid them the living wage prescribed by the original ordinance, even after the July 2010 amendment went into effect.

As early as June 2010, Grill Concepts' human resources director suspected that Grill Concepts might be underpaying its employees. That month, the director saw a newspaper article reporting that the living wage within the Zone was higher than what Grill Concepts was paying. The director contacted Grill Concepts' outside counsel, who contacted the Los Angeles City Attorney's Office. A city attorney relayed that an amendment to the ordinance was "in process." Neither counsel nor the director followed up with the city attorney's office. Nor did the director or outside counsel ask any of the other hotel operators or restaurateurs in the Zone what living wage they were paying. Instead, the director continued doing what he had always done— namely, typing "Airport Hospitality Enhancement Zone Ordinance" into the search query on the City of Los Angeles's website to see if an amended ordinance came up.

In late March 2014, the attorney for two restaurant employees wrote to Grill Concepts, pointing out that Grill Concepts had not been paying the living wage mandated by the

4

amended ordinance and demanding immediate reimbursement of the underpayment.

## II.    Procedural Background

In April 2014, three restaurant employees—plaintiffs Sandra Diaz, Alfredo Mejia, and Madecadel Goytia (collectively, plaintiffs)—sued Grill Concepts on behalf of a class of current and former restaurant employees for:  (1) failing to pay the living wage required by the 2010 amendment to the ordinance, which (a) violated the ordinance (L.A. Mun. Code, § 104.109.A), and (b) constituted unfair competition (Bus. & Prof. Code, § 17200); and (2) "waiting time" penalties, as to those class members who had quit or been fired while being underpaid (Lab. Code, § 203). More specifically, plaintiffs sought (1) reimbursement for underpayment of the living wage (L.A. Mun. Code, § 104.109.A.1), (2) prejudgment interest on the underpayment (Civ. Code, § 3287), (3) a penalty of three times the underpayment due to Grill Concepts' "deliberate[] fail[ure]" to pay the correct amount (L.A. Mun. Code, §§ 104.102.G, 104.109.A.4), and, as to former employees, (4) waiting time penalties (Lab. Code, § 203).

Within eight weeks, Grill Concepts calculated the underpayment and cut checks to all former and current employees for the full amount of underpayment.

After the trial court certified the proposed class, the parties then filed cross-motions for summary adjudication aimed at assessing whether Grill Concepts was liable for anything beyond reimbursement of the underpaid wages.  Specifically, the motions addressed whether the ordinance was unconstitutionally vague and, if not, whether Grill Concepts (1) owed prejudgment interest on the underpaid wages, (2) owed treble damages under the

5

ordinance, and (3) owed waiting time penalties.

The trial court partially granted and partially denied the cross-motions. The court ruled that the ordinance was not unconstitutionally vague. Although, in the court's view, the ordinance was "intricate and not user-friendly," the ordinance sufficiently advised hotel employers what was required of them, as shown by the fact that no "other employer had a problem" understanding the ordinance. The court next concluded that the amount of underpayment was "capable of being made certain by calculation," and thus subject to prejudgment interest under Civil Code section 3287. The court found that Grill Concepts was not liable for treble damages under the ordinance because it did not "deliberately violate the ordinance." Lastly, the court ruled that Grill Concepts owed waiting time penalties because its failure to pay was "willful" within the meaning of Labor Code section 203. More specifically, the court found that there was no "good faith dispute" that would have defeated a finding of willfulness because Grill Concepts merely "failed to exert enough effort to lay its hands on the [amended ordinance]"; "[a]n effort too weak," the court reasoned, "does not create a good faith dispute."

The matter proceeded to trial. By the time of trial, however, the parties had stipulated that, based on the court's earlier rulings, Grill Concepts owed $31,992.60 in prejudgment interest and $268,758.71 in waiting time penalties. The only issue tried to the court was whether the court had the discretion to waive the waiting time penalties for equitable reasons. The trial court ruled that it did not, although it commented that it would have exercised that discretion if it existed.

After the trial court entered judgment, Grill Concepts filed this timely appeal.

6

# DISCUSSION

Grill Concepts contests the trial court's award of waiting time penalties to those plaintiffs who were former employees, asserting that the trial court erred in concluding that (1) Grill Concepts acted willfully in underpaying those plaintiffs, and (2) courts lack discretion to waive the waiting time penalties. Both issues are properly before us. Although the first issue was decided at the summary adjudication stage, it is properly before us because it was not revisited at trial. (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343; Code Civ. Proc., § 906.) And the second issue was decided at trial. (Code Civ. Proc., § 904.1, subd. (a)(1).)

Labor Code section 203 empowers a court to award "an employee who is discharged or who quits" a penalty equal to up to 30 days' worth of the employee's wages "[i]f an employer *willfully* fails to pay" the employee his full wages immediately (if discharged) or within 72 hours (if he or she quits). (Lab. Code, § 203, italics added; see also Lab. Code, §§ 201, subd. (a), 202, subd. (a); *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 378.) It is called a waiting time penalty because it is awarded for effectively making the employee wait for his or her final paycheck. A waiting time penalty may be awarded when the final paycheck is for less than the applicable wage—whether it be the minimum wage, a prevailing wage, or a living wage. (*Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 326; *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 779-780 (*Road Sprinkler Fitters*).)

7

## I.    Did the Trial Court Err in Concluding that Grill Concepts Acted Willfully?

Grill Concepts contends that it did not act willfully in failing to pay those plaintiffs who quit or were fired before June 2014 the proper amount on their final paycheck because (1) Grill Concepts' underpayment was due to its inability to locate the amended ordinance (rather than a deliberate design to underpay its employees), and (2) even if Grill Concepts had located the amended ordinance, the living wage ordinance as a whole is so confusing to apply that its mistake was innocent (rather than willful).

In evaluating these arguments, various standards of review come into play.  To the extent we must interpret the Labor Code or City ordinances or evaluate constitutional questions, we do so independently.  (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247 (*Weatherford*) [statutory interpretation]; *People v. Cromer* (2001) 24 Cal.4th 889, 894 [constitutional interpretation].)  To the extent we must evaluate the trial court's finding that Grill Concepts acted willfully, our standard of review is more nuanced:  Although a finding of willfulness is typically reviewed for substantial evidence after trial (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1202-1203 (*Amaral*); see also *Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 584 [abuse of discretion review]), where, as here, that finding is made in the context of a motion for summary adjudication—and is thus predicated on the absence of any material, disputed facts—we review the finding of willfulness de novo.  (*Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1384 ["application of a statute to undisputed facts" calls for "de novo" review]; accord, *Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273 [summary adjudication rulings reviewed de novo]).

Under Labor Code section 203, a "willful failure to pay wages . . . occurs when an employer intentionally fails to pay wages to an employee when those wages are due." (Cal. Code Regs., tit. 8, § 13520; see also *Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 7 (*Barnhill*) ["'willful' . . . means that the employer intentionally failed or refused to perform an act *which was required to be done*"]; *Kao v. Holiday* (2017) 12 Cal.App.5th 947, 963.) The failure to pay is willful if the employer "knows what [it] is doing [and] intends to do what [it] is doing" (*In re Trombley* (1948) 31 Cal.2d 801, 807 (*Trombley*)), and does not also require proof that the employer acted with "a deliberate evil purpose to defraud work[ers] of wages which the employer knows to be due" (*Barnhill*, at p. 7; *Davis v. Morris* (1940) 37 Cal.App.2d 269, 274 ["'"wil[l]ful" . . . does not necessarily imply anything blameable, or any malice or wrong toward the other party'"]).[2]

Under this definition, an employer's failure to pay is not willful if that failure is due to (1) uncertainty in the law (*Barnhill*, *supra*, 125 Cal.App.3d at p. 8; *Amaral*, *supra*, 163 Cal.App.4th at p. 1202), (2) representations by the taxing authority that no further payment was required (*Amaral*, at pp. 1202-1203), or (3) the employer's "good faith mistaken belief that wages are not owed" grounded in a "'good faith dispute,'" which exists when the "employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part

_____

[2] Thus, the definition of willful under Labor Code section 203 differs from the definition of willful under the ordinance because the latter defines the term as a "deliberate[] fail[ure] or refus[al] to comply." (L.A. Mun. Code, § 104.102.G.)

9

of the employee" (*Road Sprinkler Fitters*, *supra*, 102 Cal.App.4th at p. 782; Cal. Code Regs., tit. 8, § 13520, subd. (a); *Trombley*, *supra*, 31 Cal.2d at p. 808).  A good faith dispute can exist even if the employer's proffered defense is "ultimately unsuccessful," but not if the defense is also "unsupported by any evidence, [is] unreasonable, or [is] presented in bad faith."  (Cal. Code Regs., tit. 8, § 13520, subd. (a).)

### A.    *Inability to locate amended ordinance*

Does Grill Concepts' failure to *find* the amended ordinance mean that its failure to follow that ordinance in paying its employees is not willful?  We conclude that the answer is "no."

Ignorance of the law is no excuse.  This maxim is so long-standing and so well established that it is part of the very fabric of our legal system.  (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 396-397; *Brumagin v. Tillinghast* (1861) 18 Cal. 265, 271.)  A closely related corollary is that citizens have a "duty of inquiry to determine" "whether a contemplated course of conduct is within a statutory prohibition."  (*Personal Watercraft Coalition v. Marin County Bd. of Supervisors* (2002) 100 Cal.App.4th 129, 139 (*Personal Watercraft*).)  Together, they establish the principle that "'[i]gnorance of the law, at least where coupled with negligence in failing to look it up, will not justify a trial court in granting relief . . . .'"  (*Tammen v. County of San Diego* (1967) 66 Cal.2d 468, 476 (*Tammen*); *Security Truck Line v. Monterey* (1953) 117 Cal.App.2d 441, 445; *Community Redevelopment Agency v. Superior Court* (1967) 248 Cal.App.2d 164, 174.)

Here, Grill Concepts' ignorance of the amended ordinance was "'coupled with [its] negligence in failing to look it up.'"  (*Tammen*, *supra*, 66 Cal.2d at p. 476.)  The undisputed facts show that Grill Concepts suspected it was underpaying its employees

10

and went so far as to confirm that the living wage law was in the midst of being amended, but then did nothing else. It did not follow up with the city attorney's office, it did not ask any other hotelier or restaurateur in the Zone what living wage they were paying, and it did not do any further legal research. Instead, it kept running the same website query it had run in the past (and which had failed to turn up the pending amendment). The trial court summed it up best when it noted that Grill Concepts "failed to follow through properly on its investigation of where to find the governing statute" and that its efforts were "below the standard of care." Accordingly, Grill Concepts' inability to locate the amended ordinance does not preclude the finding that its failure to pay was willful.

## B. *Inability to understand the ordinance*

Does Grill Concepts' purported failure to understand the ordinance in its amended form constitute a good faith dispute that means its failure to follow the ordinance was not willful? Because, as noted above, a good faith dispute is defined as the assertion of a defense that is either successful or, if ultimately unsuccessful, nonetheless supported by evidence, reasonable, and presented in good faith (Cal. Code Regs., tit. 8, § 13520, subd. (a)), we must ask two questions: (1) Is Grill Concepts' vagueness challenge to the ordinance meritorious, and if not, (2) Is that challenge nevertheless supported by evidence, reasonable, and presented in good faith? We conclude that the answer to both questions is "no."

### 1. *Is the ordinance unconstitutionally vague?*

Because the constitutional guarantee of due process generally secures the right to notice and the opportunity to be heard (*Dusenbery v. United States* (2002) 534 U.S. 161, 167), a

11

law is unconstitutionally vague only it if fails to "'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited'" or to know "what conduct on [his or her] part will render [him or her] liable to [the law's] penalties."  (*Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 763; *Connally v. General Const. Co.* (1926) 269 U.S. 385, 391.)

This vagueness standard is hard to meet, and its stringency is not accidental.  Language itself is notoriously imprecise. (*People v. Superior Court (Hartway)* (1977) 19 Cal.3d 338, 345 (*Hartway*); *Robinson v. United States* (1945) 324 U.S. 282, 286 ["In most English words and phrases there lurk uncertainties"].) Laws are also accorded a "'strong presumption'" of constitutionality that is rebutted only upon a showing that they are ""'clearly, positively, and unmistakably'"" unconstitutional. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1107.)  And when the law "regulates business behavior," the general presumption of constitutionality is even stronger and, more to the point, the law "is subject to a less strict vagueness test" because such laws have a narrower reach and because "businesses . . . can be expected to consult relevant legislation in advance of action." (*Hoffman Estates v. Flipside, Hoffman Estates* (1982) 455 U.S. 489, 498-499.)

A law is consequently vague only if it is impossible to give the law a "'reasonable and practical construction.'"  (*American Civil Liberties Union v. Board of Education* (1963) 59 Cal.2d 203, 218.)  This assessment is not made in a vacuum.  To the contrary, "'[t]he particular context is all important.'"  (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116, quoting *Communications Assn. v. Douds* (1950) 339 U.S. 382, 412.)  This assessment therefore entails "consulting 'other definable sources'"—such as

12

other statutes and regulations, legislative history, judicial opinions, legal treatises, and legal dictionaries—"that may dispel doubt and uncertainty" appearing on the face of the law alone. (*Personal Watercraft*, *supra*, 100 Cal.App.4th at pp. 139-140; *Hartway*, *supra*, 19 Cal.3d at p. 345; *Williams v. Garcetti* (1993) 5 Cal.4th 561, 570 [looking to "the definitions and the limits of parental duties that have long been a part of California dependency law and tort law"].)  In light of these standards, it is not enough to show that a law lacks the precision of a laser or of mathematics.  (*Personal Watercraft*, at p. 138; *Grayned v. City of Rockford* (1972) 408 U.S. 104, 110.)  Nor is it enough to show that the law "requires interpretation" (*People v. Hazelton* (1996) 14 Cal.4th 101, 109), that the law's meaning is "difficult to ascertain" (*Smith v. Peterson* (1955) 131 Cal.App.2d 241, 246), or that the law is "'difficult to apply'" (*People v. Serrata* (1976) 62 Cal.App.3d 9, 22).

The amended living wage ordinance is not vague because it is possible to give it a "'reasonable and practical construction.'" Los Angeles Municipal Code sections 104.104 and 104.106 together require that "Hotel Employers" "shall pay" "Hotel Workers" "no less than the hourly rates set under the authority of this article."  (L.A. Mun. Code, §§ 104.104.A [so stating], 104.106.B ["On July 1, 2007, Hotel Workers shall be paid a living wage in its entirety, as required by section 104.104.A of this ordinance"].)  Section 104.104.A states that, "[s]tarting July 1, 2009, and continuing thereafter," the hourly "rates shall continue to be adjusted as of July 1 of each year to be the same dollar amounts as the wage rates at such dates adjusted pursuant to Section 10.37.2(a) of the Los Angeles Administrative Code."  (L.A. Mun. Code, § 104.104.A.)  Section 10.37.2(a) of the Los Angeles

13

Administrative Code looks to the "annual[] . . . adjustments, if any, to retirement benefits paid to members of the Los Angeles City Employees Retirement System (LACERS)" and specifies that the Designated Administrative Agency "shall publish a bulletin announcing the adjusted rates" each year. (L.A. Admin. Code, § 10.37.2(a).) The ordinance defines the Designated Administrative Agency for these purposes as the City's Bureau of Contract Administration. (L.A. Mun. Code, §§ 104.116, 184.09.) Read together, a "person of ordinary intelligence" would understand that, starting July 1, 2009, he or she would need to increase the living wage by the amount set forth in the Bureau of Contract Administration's annual bulletin. Put differently, the dots all connect.[3]

Grill Concepts asserts that the amended ordinance is impermissibly vague for four reasons.

First, Grill Concepts complains that the ordinance requires hoteliers to look to a bulletin "to be published *somewhere* at *some time* by *some* city agency." That a law points a person to an exterior source of information does not render that law unconstitutionally vague. As noted above, laws are to be evaluated against the backdrop of "'other definable sources'" (*Personal Watercraft*, *supra*, 100 Cal.App.4th at pp. 139-140), and here the ordinance expressly spells out which source to consult (namely, the annual bulletin). (Accord, *In re Mariah T.* (2008) 159 Cal.App.4th 428, 435 ["a statute will be deemed sufficiently

_____

[3] Although the amendment did not take effect until nearly a year later (and hence required employers to prospectively increase the living wage to account for annual adjustments made before the amendment was enacted), this does not affect the understandability of the ordinance on its face, and no one has challenged this quirk of the statute.

14

precise if its meaning can be fairly ascertained by references to similar statutes" or sources].)  Further, the ordinance designates which agency is to publish the bulletin.  And the ordinance necessarily implies that the bulletin will be published between June 1 (the date the agency must, by statute, be informed of the adjustment amount) and July 1 (the date the agency's bulletin must be implemented by hoteliers and restaurateurs).  Grill Concepts also presented no evidence indicating that any hotelier or restaurateur in the Zone had difficulty locating the agency's bulletin within that window each year.  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 54 [burden of proof on party alleging vagueness].)

Second, Grill Concepts contends that Los Angeles Administrative Code section 10.37.2(a) does not clearly point the reader to the annual adjustment rate used by LACERS.  The text of that section provides that the LACERS adjustment rate applies to "[(1)] [t]he hourly rate with health benefits to be paid to all Employees and [(2)] the hourly rate without health benefits to be paid to Airport Employees."  (L.A. Admin. Code, § 10.37.2(a).)  Grill Concepts asserts that because its employees are not paid the "hourly rate with health benefits" (because they are paid the higher hourly rate for employees who do not receive health benefits) and are not "Airport Employees" (because they do not work for LAX), section 10.37.2(a) by its own terms does not apply specifically to them, thereby making it unclear whether the LACERS adjustment rate in section 10.37.2 applies to them.  We reject this argument because the amended ordinance, by its plain language, borrows *the annual adjustment rate* from section 10.37.2(a); it does not purport to incorporate the entirety of the section's provisions.  (L.A. Mun. Code, § 104.104.A [specifying

that the hourly rates "shall continue to be adjusted . . . to be the same dollar amounts as the wage rates at such dates adjusted pursuant to Section 10.37.2(a)"].)

Third, Grill Concepts notes that the City Council's amendment left intact the initial version of section 104.106, and argues that this creates uncertainty because that version continues to reference the original annual adjustment metric. To be sure, section 104.106.C continues to read: "On January 1, 2008, Hotel Workers shall receive their first annual living wage adjustment, as specified in section 104.104.A of this ordinance, which requires annual adjustments to correspond to changes, if any, to the Consumer Price Index for Urban Wage Earners and Clerical Workers in Los Angeles-Riverside Counties." (L.A. Mun. Code, § 104.106.C.) But the amended section 104.104 expressly provides that, "[s]tarting July 1, 2009, and continuing thereafter" employers subject to the ordinance are to use the new annual adjustment metric. (L.A. Mun. Code, § 104.104.A.) Any person reading the statute would know that section 104.106 explained the metric for making the annual adjustment rate on January 1, 2008, while section 104.104 explains the metric for making annual adjustments starting on July 1, 2009, and thereafter. And any residual confusion is dispelled by the general legal principle that the more recently enacted ordinance trumps. (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 942.)

Fourth, Grill Concepts points out that plaintiffs' lawyer, in its March 2014 demand letter, cited a living wage scale inapplicable to plaintiffs. Without knowing *why* the wrong wage scale was cited, we cannot and need not infer that it was due to a misunderstanding of the ordinance rather than a clerical error.

16

In sum, the amended ordinance is not unconstitutionally vague.

>    2.    *Even though unsuccessful, is the vagueness challenge to the ordinance supported by evidence, reasonable, and presented in good faith*?

Although we have no reason to question the trial court's finding that Grill Concepts asserted its vagueness challenge in good faith, its challenge is neither supported by the evidence nor reasonable.  As explained above, we have determined that the amended ordinance is not vague, and our determination was not a close call.  The unreasonableness of Grill Concepts' vagueness challenge is only confirmed by the absence of any evidence that any other hotelier or restauranteur had any problem reading the ordinance to pay its employees the proper living wage.  (*Amaral*, *supra*, 163 Cal.App.4th at p. 1183 [absence of evidence of confusion refutes vagueness challenge].)

Grill Concepts raises two further points in support of its position that its vagueness challenge constitutes a good faith dispute.

First, it trumpets the trial court's finding that it acted in good faith in asserting its vagueness challenge.  This is true, but of no moment.  A "'good faith dispute'" excludes defenses that "are unsupported by any evidence, are unreasonable, *or* are presented in bad faith."  (Cal. Code Regs., tit. 8, § 13520, subd. (a), italics added; accord, *FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 802 [good faith defense regulation "imposes an objective standard"].)  Any of the three precludes a defense from being a good faith dispute.  Thus, Grill Concepts' good faith does not cure the objective unreasonableness of its challenge or the lack of evidence to support it.

17

Second, Grill Concepts criticizes the trial court for ruling or otherwise suggesting that (1) a good faith dispute is invalid unless raised contemporaneously with the underpayment of wages, (2) Grill Concepts' vagueness argument is "separate" from its argument that its conduct was not willful, and (3) whether Grill Concepts had a good faith dispute turns on whether its vagueness challenge defense was actually viable. Our analysis on appeal does not make any of these alleged errors. Because we review the trial court's ruling and not its reasoning (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12), any missteps in its reasoning are irrelevant.

In sum, Grill Concepts' vagueness challenge does not qualify as a good faith dispute.

## II. Did the Trial Court Err in Concluding that it Lacked Discretion to Waive the Waiting Time Penalties Under Labor Code section 203?

Grill Concepts argues that Labor Code section 203 confers upon trial courts the discretion to dispense with waiting time penalties for equitable reasons. This argument rests upon a question of statutory interpretation, so our review is de novo. (*Weatherford*, *supra*, 2 Cal.5th at p. 1247.)

We conclude that Labor Code section 203 does not imbue trial courts with the discretion to waive or reduce waiting time penalties, and do so for two reasons.

First, the plain text of the statute says: "If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee *shall* continue as a penalty" for up to 30 days. (Lab. Code, § 203, italics added.) And the Labor Code elsewhere provides that, throughout that code, "'[s]hall' is mandatory . . . ." (Lab. Code, § 15; accord, *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th

18

538, 542 ["we 'ordinarily' construe . . . the word 'shall' as mandatory"].) Where, as here, a statute's plain text is unambiguous, our analysis begins and ends with that text. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 737 ["""we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law"""].) Our Legislature knows how to make the imposition of a penalty discretionary (e.g., Lab. Code, § 2699); its decision not to do so in Labor Code section 203 must be given effect. Further, as noted above, the term willfully has been construed—by cases and by regulation—to exclude situations in which an employer's failure to pay is understandable due to equitable considerations (such as uncertainty in the law, misrepresentation by the taxing authority, or the existence of a good faith dispute). Were we to recognize a trial court's equitable discretion to except an employer from a waiting time penalty on equitable grounds unconnected to whether the failure to pay was willful, we would be impermissibly creating an exception to the penalty for willful violations. This is not something we are allowed to do. (*People v. Pieters* (1991) 52 Cal.3d 894, 900-901 ["creating a statutory exception where the Legislature has failed to do so would intrude upon a legislative function"]; *Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 583-584 [same].)

Second, the purpose of the waiting time penalty is "to compel the immediate payment of earned wages upon a discharge" by attaching a substantial penalty to any delay in cutting the final paycheck. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 92; *Mamika v. Barca* (1998) 68 Cal.App.4th 487, 491-492.) Eliminating such delay is "'essential to the public welfare'" because employees "'depend[] on wages for the

necessities of life.'" (*Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831, 837, quoting *Trombley*, *supra*, 31 Cal.2d at pp. 809-810.) Making the penalty optional means it will not always be applied and, more to the point, means it will likely be litigated in every case; the very existence of such an escape valve reduces employers' incentive to comply and thereby undercuts the very purpose of the penalty. We will not construe a statute in a way that undermines its purpose. (See *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1397.)

Grill Concepts notes that courts have fashioned equitable exceptions in other contexts, and urges us to do so here. Most of these cases have nothing to do with Labor Code section 203 or, if they do, are distinguishable. In *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 983, 996, our Supreme Court excused a contractor from the applicable prevailing wage law, based on "equitable considerations," when the government agency that hired the contractor represented that the prevailing wage law did not apply to the project at issue. The city attorney's office made no such representation here. In *Cantlay & Tanzola, Inc. v. Ingels* (1939) 31 Cal.App.2d 553, 556-557, the court excused a vehicle owner from paying a penalty for late payment of vehicle registration fees when the lateness was due to an error by a third party bank. And *Petrovich v. Arcadia* (1950) 36 Cal.2d 78, 84-85 simply refused to enforce a liquidated damages clause in a contract. The only case Grill Concepts cites involving Labor Code section 203 is *Oppenheimer v. Sunkist Growers, Inc.* (1957) 153 Cal.App.2d Supp. 897, 898-899, which construed section 203 to preclude waiting time penalties from continuing to accrue once the last paycheck was delivered, even if that paycheck did not itself include the amount of the then-accrued waiting time

20

penalties; it did not speak to the issue of equitable discretion.

## **DISPOSITION**

The judgment is affirmed.  Plaintiffs are entitled to their costs on appeal.

**<u>CERTIFIED FOR PUBLICATION.</u>**


_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
CHAVEZ