Filed 12/12/18; pub. order 1/4/19 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TERRY FURRY,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>EAST BAY PUBLISHING, LLC,<br><br>      Defendant and Respondent. | A151986<br><br>(Alameda County<br>Super. Ct. No. RG14734131) |

Terry Furry sued his former employers East Bay Express and East Bay Publishing LLC (collectively East Bay) for, among other things, unpaid overtime wages, meal and rest break compensation, and statutory penalties for inaccurate wage statements. Although the trial court found that East Bay failed to keep accurate records of Furry's work hours, it concluded that Furry was not entitled to any relief because his testimony was too uncertain to support a just and reasonable inference that he performed work for which he was not paid. The trial court also found that Furry was provided with uninterrupted meal and rest breaks as required by law.

For the reasons set forth below, we hold that it was error to completely deny Furry relief on his overtime claim, because imprecise evidence by an employee can provide a sufficient basis for damages when the employer fails to keep accurate records of the employee's work hours. (*Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 727 (*Hernandez*).) We agree, however, that Furry is not entitled to premium or regular pay for missed meal breaks because he failed to demonstrate that East Bay knew or

reasonably should have known he was working through authorized meal breaks. Accordingly, we reverse the judgment in part and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

East Bay Express is a weekly newspaper based in Oakland. Furry began working for East Bay Express in 1996. In 2007, the newspaper was purchased by East Bay Publishing LLC, and Jody Colley became the publisher and Furry's supervisor. At the time, Furry was a senior account executive, and his job was to sell advertising. In 2008, Furry was given the additional job title of "marketing director," making him responsible for organizing marketing events, street teams and other promotional activities for the newspaper in addition to his sales activities.

In 2009, Furry was promoted to the position of sales and marketing director. His compensation was a base salary of $20,000, commissions (both as to his direct sales and the sales of his staff), bonuses, and vacation pay. Each employee of East Bay received a commission breakdown for each pay period. Furry's wage statements did not break down the information in terms of hours worked, his hourly rate, his overtime rate, his double time rate, or the amount of any overtime worked. East Bay did not keep track of the hours that Furry worked.

Furry's normal work day was from 8:30 or 9:00 a.m. until 5:30 or 6:00 p.m. He decided whether or not to take meal breaks, and no one ever told him he could not take a meal break. However, Furry typically did not take lunch breaks on Mondays or Tuesdays because of the heavy production schedule of trying to get the newspaper out.

In addition to his normal work hours, Furry performed work in the evenings, on weekends, and at various events and promotions sponsored by East Bay Express. His subordinate employee, Kasper Koczab, observed Furry doing event-related activities such as scouting entries for film festivals, recruiting artists, performing outreach, coordinating the event spaces, checking in with the master of ceremonies, reviewing submissions,

2

meeting with city officials, and attending the events themselves. His supervisor, Colley, knew that Furry was planning and attending events that took place outside of regular business hours in the evenings and on weekends.

Furry also created original artwork, advertising, and props that were used at East Bay Express events over the years. For example, in 2010, Furry built a couch and coffee table and made a Coca-Cola painting for an Andy Warhol-themed event. For the 24-Hour Film Festival in 2010, Furry designed a computer animation to include the sponsors of the event and promote the East Bay Express. For the Best of the East Bay event in 2010, Furry created four large paintings of windows that were used on the blues pavilion stage. For the Taste for Artisans event, Furry constructed and painted a large plywood bean bag tossing board. Colley knew that Furry worked on these pieces for use at East Bay Express events. Furry received commissions as a share of the total commissions earned by his staff in promoting and staging these events.

### *The Complaint*

In July 2014, Furry filed a complaint against East Bay Express for failure to pay minimum and overtime wages, failure to provide meal and rest breaks, knowing and intentional failure to comply with itemized wage statement provisions, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200) (UCL), and several other claims that were later dismissed.[1] In his first amended complaint, Furry named East Bay Publishing LLC as an additional defendant.

### *Trial and Decision*

Trial commenced in September 2016 on Furry's Labor Code, contract and UCL claims. During the four-day bench trial, the trial court heard testimony from Colley,

---

[1] These claims were age and sexual orientation discrimination and harassment, retaliation, and wrongful termination.

3

Koczab, Furry, former East Bay Express co-editor Robert Gammon, and East Bay president Jay Youngdahl.

Following the trial, the court issued a written tentative decision in favor of East Bay. Furry filed objections to the tentative decision in which he argued the trial court's conclusions did not comply with the law, and the court failed to address various issues.

The trial court issued an order directing East Bay to file and serve a proposed statement of decision and proposed judgment. On February 9, 2017, East Bay submitted a proposed statement of decision and proposed judgment. On February 23, 2017, the trial court signed the proposed statement of decision and entered judgment in favor of East Bay. The next day, Furry filed objections to the proposed statement of decision.[2]

In its statement of decision, the trial court found that East Bay did not keep detailed records of the hours worked by Furry and failed to meet its burden of proof that Furry was exempt from the laws pertaining to overtime, minimum wage, and meal and rest breaks. However, the trial court concluded that Furry was not entitled to unpaid overtime pay because he "failed to present sufficient evidence regarding the amount and extent of his work to allow the Court to draw a just and reasonable inference that he engaged in any work for which he was not paid." The trial court found Furry's testimony regarding his work hours to be "uncertain, speculative, vague and unclear." The court also noted that Furry "failed to account for hours worked for which he was compensated by the commissions he received from the events described above." According to the trial court, Furry "appeared to be guessing rather than providing the Court with evidence that would allow the Court to make a just and reasonable inference to the number of overtime

_____

[2] Furry's objections were timely because they were filed within 15 days of the filing and service of the proposed statement of decision. (Cal. Rules of Court, rule 3.1590(g).) However, the trial court signed the proposed statement of decision and judgment before the expiration of the 15-day period to object. Under these circumstances, we think Furry's actions were sufficient to preserve his objections for appeal and to avoid implied findings in East Bay's favor on the claimed omissions from the proposed statement of decision. (See Code Civ. Proc., §§ 632, 634.)

hours actually worked, if any, at events, at home, or on weekends. . . . Any attempt by this Court to determine the amount, if any, of uncompensated overtime hours, even a rough approximation of said hours, would be pure guess work and unreasonable speculation on the Court's part." As to the meal and rest break claims, the trial court found that East Bay provided Furry with uninterrupted meal and rest breaks, and Furry's testimony that he sometimes chose to eat at his desk did not detract from this conclusion.[3]

Furry appealed from the judgment.

## DISCUSSION

### I. *Standard of Review*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).)

### II. *The Trial Court Erred in Refusing to Award Damages for Unpaid Overtime*

Furry argues that the trial court erred as a matter of law in refusing to award him damages on his overtime claim. He contends that a relaxed standard of proof applies due to East Bay's failure to keep records of his hours, and his testimony regarding the work he performed outside of normal business hours, including his estimate of the number of hours worked, was sufficient to meet this relaxed burden. We agree.

In most cases, the maximum number of hours a nonexempt employee may work without receiving overtime is eight hours per day or 40 hours per week. (Lab. Code,

---

[3] The trial court also found the evidence insufficient to support Furry's claim that East Bay had a contractual obligation to pay him an annual salary of $80,000 as director of sales and marketing. Furry does not challenge this finding on appeal.

§ 510, subd. (a); Cal. Code Regs., tit. 8, §§ 11010-11150.)  Hours worked in excess of eight hours in one day or in excess of 40 hours in one workweek are to be compensated at the rate of no less than one and one-half times the employee's regular rate of pay.  (Lab. Code, § 510, subd. (a).)  Hours worked in excess of 12 hours in one day, and hours in excess of eight hours on any seventh consecutive day of a workweek, are to be compensated at the rate of no less than twice the employee's regular rate of pay.  (*Ibid*.)

"[T]he assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption."  (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794–795.)  Here, the trial court found that East Bay failed to prove that Furry was exempt from the overtime laws, and East Bay did not appeal this ruling.

The trial court also found that East Bay failed to keep accurate time records of Furry's work hours.  "[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee. In such a situation, imprecise evidence by the employee can provide a sufficient basis for damages."  (*Hernandez*, *supra*, 199 Cal.App.3d at p. 727.)  " '[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.' "  (*Ibid.*, citing *Anderson v. Mt. Clemens Pottery Co.* (1945) 328 U.S. 680, 687–688 (*Mt. Clemens Pottery*).)

Citing *O'Brien v. Ed Donnelly Enters.* (6th Cir. 2009) 575 F.3d 567 (*O'Brien*), overruled in part on other grounds in *Campbell-Ewald Co. v. Gomez* (2016) 136 S.Ct.

6

663, the trial court recognized that a relaxed standard of proof should apply but concluded that Furry's testimony was too uncertain and speculative to allow for a just and reasonable inference that he engaged in any work for which he was not paid. In *O'Brien*, the plaintiffs failed to provide any evidentiary support for their claim under the Fair Labor Standards Act (29 U.S.C.S. § 201 et seq.) (FLSA) that the employer electronically altered the times entered by the employees in the timekeeping system. (*O'Brien*, at p. 595.) In rejecting the plaintiffs' argument that their claim should not have been dismissed on summary judgment because of *Mt. Clemens Pottery*'s lesser burden of proof, the Sixth Circuit Court of Appeals held that *Mt. Clemens Pottery* gives an FLSA plaintiff an easier way to show what his or her damages are, not to prove that a violation occurred. (*O'Brien*, at pp. 602–603.)

The instant matter is distinguishable from *O'Brien* because the underlying violation (and hence, the fact of damage) was not in dispute. According to the trial court's statement of decision, it was "uncontested that plaintiff's normal work day began at 8:30 or 9 a.m. and continued until 5:30 or 6 p.m., depending upon the day and the work load." Furry's performance of additional work beyond his regular 40-hour workweek was established through the testimony of himself, Koczab, and, most importantly, Colley, who testified that she knew Furry worked evenings and weekends at times, that the events he was required to attend took place outside of normal business hours, and that Furry created original artwork for East Bay Express to use at events and for advertising campaigns.[4] "Once an employee shows that he performed work for which he was not paid, the *fact* of damage is certain; the only uncertainty is the *amount of damage*.

---

[4] Thus, we find no merit in East Bay's contention at oral argument that the trial court concluded there was insufficient evidence these activities were in addition to a full 40-hour workweek. The trial court acknowledged that Furry normally worked 40 hours a week but found his testimony regarding the "amount" or "hours" of overtime to be too imprecise. Given East Bay's failure to keep records of Furry's overtime hours, the imprecise nature of Furry's testimony was not a bar to relief. (*Hernandez*, *supra*, 199 Cal.App.3d at p. 727.)

7

[Citations.] In such a case, it would be a perversion of justice to deny all relief to the injured person, thereby relieving the wrongdoer from making any restitution for his wrongful act." (*Hernandez*, *supra*, 199 Cal.App.3d at pp. 726–727.)

To prove the *amount* of hours of uncompensated work, *Mt. Clemens Pottery* and *Hernandez* permit imprecise evidence by the employee. (*Hernandez*, *supra*, 199 Cal.App.3d at p. 727.) We think the detail provided in Furry's testimony was enough to shift the burden to East Bay. Furry's estimates were based on his recollection of his workload over the years, the duties and tasks he performed in connection with specific events, and the specific tasks that went into creating the artwork and promotional materials used by East Bay Express at the events. For instance, Furry testified that he spent approximately 24 hours to create the promotional animation for the 24-Hour Film Festival by using computer programs to animate the images of falling leaves, one by one. The animation was played during the trial. For the Best of the East Bay event, in which Furry created large paintings of windows for the blues pavilion stage, Furry testified that he spent approximately 28 hours over two weekends and two to three hours after work on the Monday and Friday between those weekends designing the images on a computer, getting the images enlarged, and then applying them to a wood panel, which he then painted. For the Warhol-themed event, Furry testified that he spent approximately 56 hours building the couch, 12 hours building the coffee table, and 16 hours making a painting that resembled Warhol's work. He estimated spending 28 hours building the bean bag board. Images of these pieces were introduced into evidence at trial.

That Furry had to draw his time estimates from memory was no basis to completely deny him relief. In *Hernandez*, the employee testified based on his recollection that he was required to be on his employers' premises from 8:00 a.m. until 9:00 p.m. or during the store's regular hours. (*Hernandez*, *supra*, 199 Cal.App.3d at pp. 727–728; see *Wirtz v. Dix Box Co.* (9th Cir. 1963) 322 F.2d 499, 500–501 [allowing employees to estimate average hourly earnings from piecework to supply information

missing from employer's records].)  It was the employee's memory that satisfied the initial burden, shifting the onus to the employer to either provide a specific detail on the amount of overtime or to disprove by evidence what was not correct with the employee's figures.  That does not appear to have happened here.

The trial court held that Furry failed to account for hours worked for which he was compensated by the commissions he received from the events.  We agree with Furry, however, that the commissions he received in connection with the events should have been used to calculate his regular rate of pay, and subsequently, his overtime pay, not as a basis for refusing to award relief.  Under California's Department of Industrial Relations, Division of Labor Standards Enforcement Policies and Interpretations Manual (DLSE Manual), a proper method for calculating the "regular rate of pay" for commission workers is to "divid[e] the total earnings for the week, including earnings during overtime hours, by the total hours worked during the week, including the overtime hours.  For each overtime hour worked, the employee is entitled to an additional one-half the regular rate for hours requiring time and one-half and to an additional full rate for hours requiring double time."  (DLSE Manual, § 49.2.1.2; see 29 C.F.R. § 778.117 [commissions are considered payments for hours worked and must be included in regular rate of pay].)

Finally, we reject East Bay's contention that the trial court's ruling was a credibility determination entitled to deference.  As in *Hernandez*, "[t]he trial court's conclusion that [Furry's] offer of proof of the number of overtime hours would cause the court to guess at the amount of damages was an error of law."  (*Hernandez*, *supra*, 199 Cal.App.3d at p. 726; see *Brock v. Seto* (9th Cir. 1986) 790 F.2d 1446, 1448 [error of law to conclude that proof of uncompensated overtime was too speculative where imprecision arose from employer's failure to keep records].)  Because East Bay could not provide accurate work records, the trial court had a "duty to draw whatever reasonable inferences it can from [Furry's] evidence."  (*Hernandez*, at p. 728.)  Accordingly, the trial court's refusal to award any damages to Furry on his overtime claim must be reversed.

9

### III.    *The Trial Court Did Not Err in Denying Relief on the Meal Break Claim*

"State law obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." (*Brinker Restaurant Corp. v. Superior* Court (2012) 53 Cal.4th 1004, 1018 (*Brinker*), citing Lab. Code, §§ 226.7, 512.) "[A]n employer must relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." (*Brinker*, at p. 1034.) "If an employer fails to provide an employee a meal . . . period in accordance with a state law, . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal . . . period is not provided." (Lab. Code, § 226.7, subd. (c).)

Furry does not challenge the trial court's finding that he was provided with the opportunity to take meal breaks but chose to take his meals at his desk.  Instead, he argues that even if he is not entitled to premium pay under Labor Code section 226.7, subdivision (c), he is entitled to regular compensation for the hours when East Bay knew or had reason to know he was working through meal breaks.

In *Brinker*, the Supreme Court recognized that "[i]f work does continue [during an off-duty meal period], the employer will not be liable for premium pay.  At most, it will be liable for straight pay, and then only when it 'knew or reasonably should have known that the worker was working through the authorized meal period.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1040, fn. 19.)  Furry fails, however, to demonstrate that East Bay knew or reasonably should have known that he worked during some of his meal breaks.  The trial court did not expressly make such a finding, Furry did not request it, and he did not object to its omission from the tentative or proposed statement of decision.  Furry argues his testimony regarding missed meal breaks on Mondays or Tuesdays was supported by the testimony of Koczab and Gammon.  But he provides no argument or authority as to why their knowledge is imputed to East Bay, and he points to no other evidence

10

establishing East Bay's knowledge.  The trial court correctly denied Furry relief on his meal break claim.

**IV.** *The Trial Court Erred in Not Making Findings on the Wage Statement Claim*

Labor Code section 226, subdivision (a), requires employers to furnish their employees with itemized statements showing, among other things, the total hours worked by the employee (except as provided in subdivision (j)),[5] all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate.  "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  (*Id*., subd. (e)(1).)

As Furry points out, in its statement of decision, the trial court did not address his claim for inadequate wage statements.  Furry argues that he is entitled to the full $4,000 penalty under Labor Code section 226, subdivision (e)(1), because his wage statements did not contain the following statutorily required information: total hours worked, hourly rate, overtime rate, and the amount of overtime worked.

East Bay argues that Furry cannot demonstrate any error by the trial court because he has not shown that he addressed at trial the issues of whether the failure to provide him with complete and accurate wage statements was "knowing and intentional" and whether he suffered any injury as a result of this failure.  East Bay cites *Boyd v. Bank of America Corp.* (C.D.Cal. 2015) 109 F.Supp.3d 1273 (*Boyd*) for the position that an

---

[5] Under this subdivision, the wage statement need not show total hours worked by the employee if the employee is exempt from state laws and regulations requiring payment of overtime.  (Lab. Code, § 226, subds. (j)(1), (2).)

11

employer who reasonably believes an employee is exempt from the overtime laws should not be penalized for furnishing inadequate wage statements.

From our review of the record, Furry did not fail to address his wage statement claim at trial. His counsel argued in her opening and closing arguments that East Bay knowingly and intentionally failed to comply with the wage statement laws, and the wage statements were admitted into evidence during the testimony of Colley, who confirmed that the exhibit containing these documents "details exactly what's in a paycheck."

The trial court erred in failing to make findings on Furry's wage statement claim. "The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." (Code Civ. Proc., § 632.) " 'It is essential that, unless they are waived, findings be made on every material issue raised by the pleadings and the evidence, whether those issues are raised by denial of the allegations of the complaint or cross-complaint, or on affirmative defenses set up in the answer or cross-complaint.' " (*MacMorris Sales Corp. v. Kozak* (1968) 263 Cal.App.2d 430, 440.) Here, Furry's wage statement claim was a principal controverted issue at trial because it was asserted in the complaint, the allegations were denied in East Bay's answer, and as we have discussed, the issue was raised at trial through counsel's arguments and Furry's submission of his wage statements and Colley's related testimony. Because Furry sufficiently brought the omission of this matter to the court's attention in his objections to the tentative decision and proposed statement of decision, we will not imply findings in East Bay's favor that Furry was not injured by the inadequacies in the wage statements, or that East Bay's failure to comply with Labor Code section 226, subdivision (a), was not "knowing and intentional." (Code Civ. Proc., § 634.)[6]

---

[6] It cannot be said that Furry's claim for wage statement penalties was implicitly rejected by the trial court in its ruling on Furry's overtime claim. East Bay's liability for nonpayment of overtime wages is distinct from its liability for penalties for furnishing

12

We further conclude that the trial court's failure to make the requested findings was not harmless because the evidence was sufficient to sustain findings in Furry's favor. (See *Thompson*, *supra*, 6 Cal.App.5th at p. 983.) As to the issue of injury, an employee is deemed to have suffered injury from an inadequate wage statement if the employee "cannot promptly and easily determine from the wage statement" (Lab. Code, § 226, subd. (e)(2)(B)) certain required information, including the total hours worked, the applicable hourly rates, and the corresponding number of hours worked at each hourly rate. (See Lab. Code, § 226, subd. (e)(2)(B)(i).)[7] It is apparent from the face of Furry's wage statements that they did not contain the necessary information to allow for prompt and easy determination of Furry's total hours worked, overtime hours worked, and rate of pay. Thus, the evidence was sufficient to sustain a finding that Furry suffered an injury within the meaning of the statute.

To establish a "knowing and intentional" violation of Labor Code section 226, subdivision (a), an employee must demonstrate that the employer was " 'aware of the factual predicate underlying the violation[s].' " (*Cabardo v. Patacsil* (E.D.Cal. 2017) 248 F.Supp.3d 1002, 1010 (*Cabardo*).) The employee is not required to demonstrate that the employer knew its conduct was unlawful. (*Ibid.*) "[A] 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake." (Lab. Code, § 226, subd. (e)(3).) East Bay does not dispute that

---

inaccurate wage statements. And because Furry was not shown to be exempt, the exception to the wage statement requirements for exempt employees under Labor Code section 226, subdivision (j) did not apply.

[7] East Bay suggests that the deemed-injured provision does not apply to all of Furry's years of employment because the provision was added to the statute in 2013, the year Furry's employment ended. We disagree. In *Lubin v. The Wackenhut Corp.* (2016) 5 Cal.App.5th 926, 959–960, the court held that the 2012 amendment to Labor Code section 226, subdivision (e), is retroactive because it merely clarified existing law on when injury is established for purposes of recovery under Labor Code section 226, subdivision (e)(1).

Furry's wage statements were deficient in the manner alleged, nor does East Bay contend that the requisite information was omitted due to a clerical or inadvertent mistake.

Although the federal court in *Boyd* held that an employer's wage statement violation is not knowing and intentional if the employer "had a good faith belief that the [employees] were properly classified as exempt [and therefore § 226 inapplicable]" (*Boyd*, *supra*, 109 F.Supp.3d at p. 1308), this case appears to be in the minority. Numerous other courts considering the issue have rejected a good faith defense to Labor Code section 226, because it " 'stands contrary to the often repeated legal maxim: "ignorance of the law will not excuse any person, either civilly or criminally." ' " (*Cabardo*, *supra*, 248 F.Supp.3d at p. 1010 [collecting cases]; see *Kao v. Holiday* (2017) 12 Cal.App.5th 947, 961–962 [employer's good faith belief that employee is exempt amounts to mistake of law that is not excused under Lab. Code, § 226].) We agree with this line of authority and conclude that East Bay's good faith belief that Furry was exempt is not a viable defense to his claim under Labor Code section 226.

For these reasons, we conclude the trial court prejudicially erred in failing to make findings on Furry's wage statement claim, and we remand for determination of this issue.

## V. *Remaining Causes of Action*

Furry argues that he should also receive favorable findings on his causes of action for violation of the UCL and failure to pay wages upon termination. Because we conclude the trial court erred in refusing to award damages on the overtime claim, the trial court must consider these related claims on remand. (See *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 178–179 [nonpayment of overtime wages may constitute an unlawful business practice for UCL purposes]; Lab. Code, §§ 201, subd. (a) [wages earned are due and payable immediately upon discharge], 203, subd. (a) [waiting time penalties for willful failure to pay wages upon discharge].)

14

**VI.** *Attorney Fees*

Furry argues that he is the prevailing party in this action and is therefore entitled to attorney fees. Labor Code section 1194 "allows a prevailing employee to recover attorney's fees in a 'civil action' for unpaid overtime compensation." (*Eicher v. Advanced Business Integrators, Inc.* (2007) 151 Cal.App.4th 1363, 1378.) Reasonable attorney fees and costs are also awardable on Furry's wage statement claim under Labor Code section 226, subdivision (e)(1). Because we conclude the trial court erred in refusing to award Furry any damages on his overtime claim and in failing to make findings on his wage statement claim, the trial court must consider on remand Furry's entitlement to reasonable attorney fees under Labor Code sections 1194 and 226, subdivision (e), including attorney fees on appeal.

## DISPOSITION

The judgment is affirmed, in part, as to Furry's meal period claim, but is otherwise reversed. The matter is remanded with directions to issue a new statement of decision and to award all appropriate damages, penalties, fees and costs to Furry consistent with the views expressed herein. Furry shall recover his costs on appeal.

15

_____
Kelly, J.[*]


We concur:


_____
Humes, P. J.


_____
Margulies, J.


*A151986--Furry v. East Bay Publishing LLC*

_____

[*] Judge of the Superior Court, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TERRY FURRY,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>EAST BAY PUBLISHING, LLC,<br><br>     Defendant and Respondent. | A151986<br><br>(Alameda County<br>Super. Ct. No. RG14734131)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:[8]

     The opinion in the above-entitled matter, filed on December 12, 2018, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated:                                       _____

                                          Humes, P. J.

---

[8] Humes, P. J., Margulies, J., Kelly, J. (Judge of the Superior Court, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution).

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Stephen M. Pulido

Counsel:

Law Office of Tanya Gomerman, Tatyana Gomerman Skaldin, for Plaintiff and Appellant.

Siegel, Yee & Brunner, Daniel Siegel, for Defendant and Respondent.