**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2020

Lyle W. Cayce
Clerk

No. 19-50236

_____

JOSE ESCRIBANO; BRYCE MILLER; ROBERT MILLS; MICHAEL STRAWN; JAMES WILLIAMSON; AL LEBLANC,

>    Plaintiffs - Appellants

v.

TRAVIS COUNTY, TEXAS,

>    Defendant - Appellee

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before DAVIS, SMITH, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Whether a worker is entitled to the Fair Labor Standard Act's time-and-a-half requirement for overtime pay is an important question for both employers and employees. Unfortunately, the answer is not always straightforward. A number of exemptions take employees outside the FLSA. Byzantine regulations define those exemptions. Informal Department of Labor guidance in the form of opinion letters also tries to clarify the exemptions. Then there can be exceptions to the exemptions. Figuring out if an exception brings the employee back under the FLSA may require looking at yet another set of regulations and agency guidance.

No 19-50236

This FLSA case involved one of those multilayered classification determinations.  The facts were not complicated, so the trial lasted less than a week.  But confusion over two possible exemptions, as well as an exception to those exemptions, caused the posttrial litigation to last more than two years.  The result was a ruling that the employer had established as a matter of law one element of proving the exemptions.  Remaining questions about the exemptions and exception would have to be decided by a jury at a second trial.  But the employees elected not to pursue the new trial.  Instead they put all their eggs in the appellate basket, seeking to overturn the court's ruling that the employer had proven one element of the exemptions.  Because both their procedural and substantive challenges to that posttrial ruling come up empty, we AFFIRM.

I.

A.

Six Travis County Sheriff's Office detectives filed this suit alleging that they were entitled to overtime pay.  The County was not paying the detectives additional amounts when they worked overtime, so the only issue was whether the detectives were exempt from the FLSA.  The County argued that the detectives were exempt as both executive and highly-compensated employees. 29 C.F.R. §§ 541.100(a), 541.601(c).  The detectives contended that those exemptions did not apply, and even if they did, they were still entitled to overtime pay under the first-responder exception to those exemptions.  29 C.F.R. § 541.3(b).

Both of the exemptions the County asserted apply only if the employees are paid on a salary basis.  We will get into the details of the "salary basis" requirement later, but it generally means what its label suggests: an employee

2

is paid on a salary basis if he or she receives the same wage each pay period, regardless of "the quality or quantity of the work performed." *Id.* § 541.602(a).

Paying employees on a salary basis is not the only requirement for the executive or highly-compensated-employee exemptions.  Important to understanding the jury's verdict and the procedural history that followed, both exemptions require an employer to prove more.  Even if the County was paying the detectives on a salary basis, the executive exemption required the County to also show that the detectives: (1) were paid at least $455/week;[1] (2) were primarily managers; (3) "customarily and regularly direct[ed] the work of" at least two other employees; and (4) had hiring and firing authority, or that their suggestions as to "hiring, firing, [or] promotion" were "given particular weight." *Id.* § 541.100(a).  The highly-compensated-employee exemption required the County to also show that the detectives: (1) were paid at least $455/week; (2) earned at least $100,000 annually; and (3) "customarily and regularly perform[ed] any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee . . . ." *Id.* § 541.601(a).

Because liability turned on whether an exemption applied, the verdict form started with questions about the contested elements of the two exemptions the County asserted.[2]  The first asked whether the County had proven by a preponderance of the evidence that the detectives were "compensated on a salary basis."  The jurors answered "no" for each detective. This finding meant neither exemption applied, and that meant the first-

---

[1] $455/week was the amount for the period covered by the lawsuit.  That number is now $684/week. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51,230, 51,231 (Sept. 27, 2019).

[2] The verdict form did not ask about all the elements listed above, because it was undisputed that some of the requirements (like earning $455 per week and customarily directing the work of two or more employees) were satisfied.

No 19-50236

responder exception did not matter. So the jury went straight to determining the detectives' damages.

Four months later, the district court entered judgment for the detectives, adding liquidated damages and postjudgment interest to what the jury awarded. The end of the district court litigation appeared to be in sight.

B.

As it turned out, the litigation was just getting started. Within thirty days of the entry of judgment, the County filed the customary Rule 50(b) motion seeking judgment as a matter of law. It argued that no rational jury could have found that the detectives were not paid on a salary basis.[3] The detectives conditionally moved under Rule 59 for a new trial. In the event the court granted the County's motion on the salary issue, the detectives wanted a new trial to determine whether their primary duty was front-line law enforcement or management. That answer would resolve the executive exemption and first-responder exception. At this time at least, the detectives understood that vacatur of the jury's answer to the salary question would require a new trial for additional findings.

The district court agreed with the County, ruling as a matter of law that the detectives were paid a salary. Having vacated the jury's finding on this first requirement of the exemptions, the district court also granted the detectives' request for a new trial. At a new trial, the court explained, the jury would determine whether the detectives primarily performed office work and, as a result, were exempt as highly-compensated employees.

The detectives sought reconsideration, contending that they had conditionally asked for a new trial on the management issue, an element of the

---

[3] The detectives had first sought judgment as a matter of law on this issue after the detectives rested at a trial. The court denied the motion without prejudice, noting that the County could renew it after verdict.

4

executive exemption and first-responder exception, not on the office-work issue, which is part of the highly-compensated-employee exemption. The reconsideration motion confused the district court.[4] The court explained that undoing the jury's "no salary" finding left the ultimate exemption question unresolved. With the court now having ruled that the County had proven the first element of both the executive and highly-compensated-employee exemptions, a new trial would be needed to determine if the County could prove the remaining elements of either exemption. So the court asked the detectives to clarify how they wanted to proceed.

Rather than taking the hint that they needed to challenge both exemptions in a new trial, the detectives changed course; they no longer wanted a new trial on any issues and "unequivocally withdr[e]w" their Rule 59 motion. The detectives instead moved for the reentry of judgment in their favor on the ground that the parties had stipulated to the *prima facie* elements of an FLSA overtime claim and the County had failed to prove an exemption at trial.

After again explaining why its vacating the jury's "no salary" finding meant a new jury needed to answer the remaining questions about the exemptions, the district court refused to enter judgment for the detectives. It then withdrew the detectives' request for a new trial given that they no longer wanted one.

---

[4] The first-responder exception applies to "police officers, detectives, [and] investigators . . . regardless of rank or pay level, who perform work such as . . . preventing or detecting crimes," "conducting investigations," or "performing surveillance." 29 C.F.R. § 541.3(b). It does not apply if the employee's primary duty is management. *Morrison v. Cty. of Fairfax*, 826 F.3d 758, 766–67 (4th Cir. 2016). So the management issue was relevant to both the executive exemption and the first-responder exception that overcomes either exemption the County asserted. The executive exemption would only apply if the jury found the detectives were primarily managers; that finding would also defeat the first-responder exception. This overlapping impact of the management issue may explain some of the confusion between the detectives and district court at this stage of the litigation.

No 19-50236

Standing their ground, the detectives again sought judgment on the jury's verdict. The district court denied that request as an untimely motion for judgment as a matter of law. The court repeated what it had already "explained several times": its posttrial ruling that the County paid the detectives on a salary basis meant the only way to move forward with the case was for a new trial that would answer the remaining questions about whether the FLSA covered the detectives. Despite the detectives' insistence that they no longer wanted a new trial, the court gave them about a month to request one. If the detectives did not seek a trial within that period, the court would dismiss the case for want of prosecution.

The broken record kept playing. Rather than asking for the new trial, the detectives yet again asserted—out of procedural vehicles, this time in a "motion for clarification"—that they had stated a FLSA overtime claim; that the grant of judgment on the salary issue did not invalidate the "prima facie portion of the verdict"; and that the County was not entitled to another opportunity to prove its affirmative defenses. The detectives also contended that dismissal for failure to prosecute would be "an incredibly unjust result." If the court did not enter judgment in favor of the detectives based on the jury's verdict, the detectives asked for entry of final judgment so they could appeal.

The district court again refused to reinstate the verdict. For the fourth time, it explained why its Rule 50 ruling in favor of the County on the salary issue "had the effect of vacating the" verdict. Because the detectives did not want a new trial, the court entered a final judgment.

## II.

If this procedural wrangling we have just recounted is not enough, on appeal the parties add two jurisdictional challenges to the mix. The County contends this appeal was filed late and must be dismissed. The detectives

argue that the County's Rule 50 motion was filed late.  Because they characterize the Rule 50 deadline for seeking judgment as a matter of law as jurisdictional, the detectives argue that the district court lacked authority to decide the salary question.  If true, that would unravel all the rulings that followed and require reentering the judgment that reflected the jury's verdict.

Neither of the jurisdictional challenges succeeds.

A.

We begin with the County's challenge to our appellate jurisdiction.  In a civil case, a party has 30 days from entry of final judgment to file a notice of appeal.  FED. R. APP. P. 4(a)(1)(A).  Final judgment dismissing this case was not entered until February 2019, and the detectives appealed within 30 days of that docket entry.  So under the final judgment rule, appellate jurisdiction seems like a nonissue.

The County contends, however, that the detectives' notice of appeal was long past due because the Rule 50(b) ruling they are challenging was entered in September 2017.  The County's position that the time for appealing expired *before* entry of final judgment is at odds with the basic principle that "an appeal ordinarily will not lie until after final judgment has been entered in a case." *Cunningham v. Hamilton Cty.*, 527 U.S. 198, 203 (1999).  And in that single appeal from a final judgment, "claims of district court error at any stage of the litigation may be ventilated." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994).

Where, then, does the County find support for its argument that the appellate clock started ticking when the district court granted the Rule 50(b) motion even though entry of final judgment was more than a year away?  It cites the rule of appellate procedure providing that the "time to file an appeal runs" from the date the district court decides certain postjudgment motions,

including one for judgment as a matter of law under Rule 50. FED. R. APP. P. 4(a)(4)(A). But this rule extends, rather than shortens, the usual 30-day deadline to appeal after final judgment. *Hanna v. Maxwell*, 548 F. App'x 192, 194 (5th Cir. 2013) (per curiam) (explaining that "certain postjudgment motions . . . may *extend the time* for filing an appeal." (emphasis added) (citations omitted)); *see generally* 16A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3950.4 (5th ed. 2019). If, for example, a party timely moves for reconsideration after entry of final judgment, then the 30-day clock starts when the court denies the reconsideration motion. *See Lawson v. Stephens*, 900 F.3d 715, 718 (5th Cir. 2018). Or, to take an example from this case, recall that the court first entered judgment in favor of the detectives based on the verdict. But the time to appeal did not start running from the initial entry of judgment because the County filed a Rule 50(b) motion. FED. R. APP. P. 4(a)(4)(A)(i).

The confusion about Rule 4(a)(4)(A)'s application to this case may be because the ruling on a Rule 50(b) motion will often start the 30-day clock. But that depends on the relief the court grants. A court has three options when ruling on a posttrial motion for judgment as a matter of law. FED. R. CIV. P. 50(b). It may deny the motion and "allow judgment on the verdict" or it may grant the motion in full and enter judgment as a matter of law in favor of the movant. FED. R. CIV. P. 50(b)(1), (3). In both of those cases the result is a final judgment, and it is time to appeal. *See Cyrak v. Lemon*, 919 F.2d 320, 322–23 (5th Cir. 1990) (calculating the deadline for filing an appeal as 30 days from the denial of a Rule 50(b) motion, not the entry of judgment); *Harrell v. Dixon Bay Transp. Co.*, 718 F.2d 123, 127 (5th Cir. 1983) (granting judgment notwithstanding the verdict resulted in "entry of a *new judgment . . .* from which the time for filing a notice of appeal commenced to run anew"); *see also*

15B WRIGHT & MILLER, *supra*, § 3915.5 (explaining that "[t]he very structure of Appellate Rule 4(a)(4) is built on [the] assumption" that the granting of a posttrial order will usually lead to "entry of a final judgment, either for the first time or in place of the original final judgment").

But there is a third option: ordering a new trial. FED. R. CIV. P. 50(b)(2). That is what the court did after ruling as a matter of law that the County paid the detectives a salary. And an order granting a new trial is not immediately appealable. *See Evers v. Equifax, Inc.*, 650 F.2d 793, 796 (5th Cir. Unit B 1981) (recognizing that when posttrial litigation results in the need for a new trial, appeal of those rulings must await "entry of final judgment in the second trial"); 15B WRIGHT & MILLER, *supra*, § 3915.5 ("An order granting a new trial, however, ordinarily is not final; review is supposed to be available only after completion of the new trial."). Only after the exemption was fully resolved after a new trial—or as it turned out, after the detectives decided to no longer pursue the case—could final judgment be entered. Because the detectives timely appealed once that final judgment was entered, we have jurisdiction.

## B.

The detectives contend that delay by the County resulted in a jurisdictional defect at an earlier stage of this proceeding. Their argument relies on the deadline for seeking judgment as a matter of law under Rule 50(b), which must be within 28 days of two possible dates: (1) when judgment was entered, or (2) "if the motion addresses a jury issue not decided by a verdict," when the jury was discharged. FED. R. CIV. P. 50(b). The detectives argue that the jury-discharge date applied because the jury did not answer all the questions related to the exemptions. If the detectives are correct about that, then the County's Rule 50(b) motion was untimely because it was not filed until

after the court entered initial judgment in favor of the detectives, which was months after the jury had been discharged.

The detectives failed to raise this issue in the district court. Their characterization of this as a jurisdictional problem is essential. If missing the Rule 50(b) deadline is jurisdictional, then it does not matter that the detectives failed to challenge the motion's timeliness. *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) ("The jurisdictional defect is not subject to waiver or forfeiture."). And the detectives assume they are on firm footing in treating this as a jurisdictional issue. After all, we held 25 years ago that the "requirement that post-trial motions be filed within the relevant . . . period after entry of judgment is jurisdictional, and may not be extended by a waiver of the parties or by a rule of the district court." *U.S. Leather, Inc. v. H & W P'ship*, 60 F.3d 222, 225 (5th Cir. 1995).

Having an on-point case from our circuit just about always resolves an issue. But our Rule 50-is-jurisdictional precedent ends up not being the trump card the detectives believe it to be. Recognizing the significant consequences that attach to classifying a deadline as jurisdictional—it means not only that waiver is inapplicable, but also that equitable doctrines like tolling may not relieve late filings[5]—recent Supreme Court decisions have drawn a sharper line in clarifying when a time limit is jurisdictional. The key is whether the deadline appears in a statute, because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). Unlike statutory deadlines, those that appear in court-made rules

---

[5] *Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("Because this Court has no authority to create equitable exceptions to jurisdictional requirements, use of the 'unique circumstances' doctrine is illegitimate."); *Stone v. I.N.S.*, 514 U.S. 386, 405 (1995) ("This is all the more true of statutory provisions specifying the timing of review, for those time limits are, as we have often stated, mandatory and jurisdictional, and are not subject to equitable tolling." (quotation and citations omitted)).

are treated as claim-processing requirements that do not restrict a court's authority. *Hamer*, 138 S. Ct. at 17. Nonjurisdictional deadlines still play an important role in "promot[ing] the orderly progress of litigation." *Id.* (quotation omitted). If not followed, they will still usually doom a party's case. *See, e.g.*, *Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017). But a critical difference is that claim-processing rules apply only "if properly raised by an opposing party." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019).

Repeatedly emphasizing that the classification turns on whether the deadline is in a statute, the Supreme Court has held that the time limits in Civil Rule 23(f), Appellate Rule 4(a)(5)(C), Criminal Rules 33 and 45, and Bankruptcy Rules 4004 and 9006 are not jurisdictional. *Lambert*, 139 S. Ct. at 714 (Civil Rule 23(f)); *Hamer*, 138 S. Ct. at 17, 22 (Appellate Rule 4(a)(5)(C)); *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam) (Criminal Rules 33 and 45(b)(2)); *Kontrick*, 540 U.S. at 452 (Bankruptcy Rules 4004 and 9006).

The Court has not addressed the rule we confront, Civil Rule 50(b). But its reasoning in these cases—that "[i]t is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction," *Hamer*, 138 S. Ct. at 17 (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978))—compels the conclusion that Rule 50(b) is also a claim-processing requirement. We therefore hold that Rule 50 does not impose a jurisdictional deadline.[6] *United States v. Vargas-Ocampo*, 747 F.3d 299, 300 n.1 (5th Cir. 2014) (en banc) ("Of course, a panel may determine that prior Fifth Circuit precedent is no longer binding because of inconsistency with Supreme Court decisions."). In doing so, we join the at least five other circuits that have

---

[6] We have not cited *U.S. Leather* for the proposition that Rule 50(b)'s time limit is jurisdictional in a published opinion since 2004, the year *Kontrick* was decided. And recent unpublished opinions relying on *U.S. Leather* have not addressed whether it accords with the Supreme Court's latest caselaw on when a deadline is jurisdictional. *See, e.g.*, *Gil Ramirez Grp., L.L.C. v. Marshall*, 765 F. App'x 970, 975 (5th Cir. 2019).

No 19-50236

applied contemporary jurisdiction caselaw to hold that the time limits in Rule 50(b) are not jurisdictional. *Blue v. Int'l Bhd. of Elec. Workers Local Union 159*, 676 F.3d 579, 584–85 (7th Cir. 2012); *Maxwell v. Dodd*, 662 F.3d 418, 421 (6th Cir. 2011); *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009); *Dill v. Gen. Am. Life Ins. Co.*, 525 F.3d 612, 618 (8th Cir. 2008); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 232 (2d Cir. 2000) (per curiam).

As a result, the detectives' failure to challenge the timeliness of the Rule 50(b) motion in the district court means that they have forfeited that objection.[7] The district court had jurisdiction to decide the motion for judgment as a matter of law.

## III.

The detectives continue to press their argument about the consequences of the Rule 50(b) ruling. Renewing their position that resulted in so much delay in the trial court, the detectives contend that even if the district court correctly ruled in the County's favor on the salary question, that ruling did not vacate the verdict the jury rendered for the detectives. Steadfast devotion to

---

[7] In any event, the detectives are wrong that the County had to file its Rule 50(b) motion within 28 days of the jury's discharge. They argue that there were "jury issue[s] not decided by a verdict," FED. R. CIV. P. 50(b), because the jury did not answer every question after finding that the detectives were not paid a salary. But the jury returned a complete verdict based on its finding that the detectives were paid by the hour; if upheld by the court, that verdict would have fully resolved liability. *See* FED. R. CIV. P. 50(b) advisory committee's note to 2006 amendment (stating that a party must renew a motion for judgment within 28 days of the jury's discharge "when the trial ends without a verdict or with a verdict that *does not dispose of all issues suitable for resolution by verdict*" (emphasis added)); *see also* 9B WRIGHT & MILLER, *supra*, § 2537 ("The party . . . may make the renewed post-verdict motion under Rule 50(b) within 28 days after entry of judgment or, *if a verdict was not returned*, within 28 days after the jury has been discharged." (emphasis added)). Because the jury "dispose[d] of all issues" necessary to reaching a verdict, the County's renewed motion—filed within 28 days of the court's initial judgment—was timely.

this belief is why the detectives did not pursue the new trial the district court repeatedly offered.

That was an unwise decision because the impact of the court's ruling that the detectives were paid a salary was obvious: the other disputed elements of the FLSA exemptions and exception needed to be answered.  The detectives counter that the County's defenses no longer mattered; because the district court did not set aside their *prima facie* case—that is, the elements of a FLSA claim the plaintiff must prove such as the failure to pay overtime, which the County conceded—judgment in the detectives' favor should have been entered.  But if that is true, then why was there a trial in the first place?  The only liability questions the jury was asked were about the exemptions and an exception to those exemptions.

According to the detectives, the County was entitled to one trial to prove its exemptions, but not a second one as it "failed" to prove an exemption the first time.  That argument does not make sense.  If the district court correctly ruled that the jury erred in rejecting the exemptions by answering "No" to whether the detectives were paid a salary, then a second trial was necessary because the FLSA status of the detectives remained unresolved.  It is not the County's fault if the jury incorrectly answered the salary question.  And, as already mentioned, Rule 50 contemplates that a new trial may be one result of a successful motion for judgment as a matter of law.  FED. R. CIV. P. 50(b)(2).

Perhaps considering this case's procedural posture from the standpoint of a plaintiff's case (rather than a defendant's affirmative defense) will allow the point to finally sink in.  Assume a jury finds against a FLSA plaintiff on one of the elements a worker seeking overtime pay must prove—that an employee-employer relationship existed, for example.  *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (listing this as one of

four elements of the *prima facie* case for an overtime claim). Because of its defense verdict finding the plaintiff was not an employee, the jury does not decide the other elements, such as whether the defendant failed to pay higher wages for overtime hours. But after trial the court rejects the jury's finding, ruling as a matter of law that an employment relationship existed. It would then be clear as day that a new trial would be needed to decide whether the plaintiff proved the other elements of an overtime claim.

It is that clear here. A new trial was needed to answer the additional questions about whether the detectives were exempt. By *prevailing* on a Rule 50(b) motion, the County did not somehow lose its right to assert its defenses.

IV.

At long last we reach the merits. Did the district court properly hold as a matter of law that the County paid the detectives on a salary basis?

The district court could overturn the jury's verdict for the detectives on this question only if there was "no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). *De novo* review means we look at the issue the same way. *Id.*

The Department of Labor's "salary basis" regulation says that:

> An employee will be considered to be paid on a "salary basis" . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a). "[A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." *Id.* § 541.602(a)(1).

The parties agree that the detectives earned the same predetermined amount each pay period; that set pay exceeded $100,000 a year. Those stipulations establish all but the "subject to reduction" requirement.

In another FLSA case brought by law enforcement officers, the "subject to reduction" question resulted in a seminal decision on the deference due an agency's interpretation of its regulations. *See Auer v. Robbins*, 519 U.S. 452, 459–61 (1997). *Auer* followed the Secretary of Labor's view that an employee's pay is subject to reduction if the employer had "an actual practice of making . . . deductions or an employment policy that creates a 'significant likelihood' of . . . deductions." *Id.* at 461. That, in turn, depended on whether a "clear and particularized policy . . . 'effectively communicates' that deductions will be made in specified circumstances." *Id.*

The parties argued this case under *Auer*'s "practice or policy" standard, so that is what the district court applied. It concluded that there was no practice of improper deductions or that any policy clearly permitted improper deductions.

But in a post-*Auer* regulation, the Department of Labor announced that there must be a practice of making deductions, with the existence of a policy only being evidence of that practice. 29 C.F.R. § 541.603(a)[8]; 69 Fed. Reg. at 22,180. This change "represent[ed] a departure from the Department's

---

[8] The new regulation states:

An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. The factors to consider when determining whether an employer has an actual practice of making improper deductions include . . . the number of improper deductions[;] the number of . . . employees whose salary was improperly reduced; . . . and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.

position in *Auer*." *Id.* at 22,180.  Instead of Auer's "practice or policy" standard, the ultimate inquiry is now just "practice."   *Id.* (explaining that the new regulation narrowed the standard to whether the employer had "an actual practice of making improper deductions"); *see also Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 628 (6th Cir. 2009) (observing that the Department "reinterpreted the salary-basis test").

There is no evidence of an impermissible reduction practice for detectives in the Travis County Sheriff's Office.  29 C.F.R. § 541.603(b) (noting the inquiry considers "employees in the same job classification working for the same managers responsible for the actual improper deductions").  The County never docked the plaintiffs' pay, nor does any evidence show that other detectives had their pay reduced.  Because the detectives "cannot demonstrate that [their] pay was actually subject to improper deductions," the County was entitled to judgment as a matter of law on this question.  *Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1, 4 (1st Cir. 2014) (granting summary judgment because no practice of improper reductions); *see also Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1196–98 (10th Cir. 2015); *Baden-Winterwood*, 566 F.3d at 632, 634.

Even if there were a policy authorizing such deductions, that would not be "sufficient evidence by itself to cause the exemption to be lost if a manager has never used that policy to make any actual deductions . . . ."  69 Fed. Reg. at 22,181.  In any event, we agree with the district court that the vague policies fail to "'effectively communicate[]' that deductions will be made in specified circumstances."  *Auer,* 519 U.S. at 461; 29 C.F.R. § 541.603(a).  The difficulty of discerning what those policies mean supports the Department of Labor's focus on how the detectives were actually paid.

No 19-50236

The district court correctly concluded that the County paid the detectives a salary. Although that ruling did not fully resolve whether the detectives were entitled to overtime pay, years of litigation never answered that ultimate question. A second trial would have.

* * *

The judgment is AFFIRMED.