Filed 6/6/22  Sawaked v. Atara Biotherapeutics CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| MARWAN SAWAKED,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ATARA BIOTHERAPEUTICS, INC.,<br><br>    Defendant and Respondent. | 2d Civil No. B306294<br>(Super. Ct. No. 56-2018-00519790-CU-OE-VTA)<br>(Ventura County) |

Marwan Sawaked appeals from the order granting summary judgment against him in favor of his former employer, Atara Biotherapeutics, Inc. (Atara).  He contends:  (1) the trial court improperly analyzed Atara's undisputed material facts, (2) there was a triable issue of fact whether he was an "exempt" employee, (3) he was wrongfully deprived of bonuses, (4) he was entitled to an award of penalties, and (5) Atara breached its contract.  We conclude that Atara did not establish that Sawaked was an exempt employee or was not entitled to penalties.  We reverse summary judgment in part, and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Atara develops immunotherapy treatments. Sawaked began working for Atara in 2015 as "Director" of "GMP [Good Manufacturing Practice] Quality Assurance." His offer letter, which he signed and accepted, stated his responsibilities included "oversight of GMP compliance" and "managing a quality management system." His starting salary was $180,000 per year. His employment was "'at will.'"

Although Sawaked often worked more than eight hours per day, Atara did not pay him overtime wages. He declared that he "rarely paused for a lunch or a rest break," and worked through lunch three to four days a week. He was never told that he could not take a lunch break or leave the building.

Sawaked received a $42,382.26 bonus for 2016. He received a merit increase to $183,600 effective January 1, 2017. He was terminated on February 8, 2018. He was not paid a bonus for 2017 or 2018.

Sawaked sued Atara and alleged seven causes of action: failure to (1) pay overtime wages, (2) pay full wages upon termination, (3) provide meal periods and rest breaks, (4) provide accurate wage statements, and (5) pay wages with a valid check; and for (6) breach of contract, and (7) defamation.

Atara moved for summary judgment or, in the alternative, summary adjudication. (Code Civ. Proc., § 437c, subds. (a)(1), (f)(1) & (2).) The court granted summary judgment.[1]

---

[1] Sawaked does not appeal the order regarding the defamation cause of action.

2

## DISCUSSION

### A.      Summary judgment

"[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).) It is "well established that issue finding rather than issue determination is the pivot upon which the summary judgment law turns."  (*Walsh v. Walsh* (1941) 18 Cal.2d 439, 441.)  "On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party."  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)[2]

### B.      Material facts

Sawaked contends that the trial court erred when it overruled all his objections to Atara's undisputed material facts (UMFs), and when it found that no triable issue of fact was shown by the UMFs he disputed or by the additional material facts (AMFs) he offered.  We confine our discussion to the specific material facts contested in Sawaked's briefs.  We agree with Sawaked in part.

UMF No. 6 states, "Plaintiff was, at all relevant times, properly classified as a salaried, exempt employee."  Atara

---

[2] In his reply brief, Sawaked contends that Atara filed an untimely "second Motion for Summary Judgment."  Sawaked failed to identify this as an issue under a separate heading in his opening brief.  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)  Nor has he shown that he was prejudiced by the filing of the document, which was an errata to correct clerical errors.

relied on a supervisor's declaration that described Sawaked's job duties but did not discuss the amount of time he performed exempt duties. Accordingly, UMF No. 6 did not support the conclusion that he was an exempt employee.

UMF No. 7 (that Sawaked "was allowed to take lunch and rest breaks at his discretion"), UMF Nos. 22, 23, and 24 (ineligibility for bonuses), UMF No. 30 (that Sawaked "supervised his direct reports by reviewing their work"), and UMF Nos. 62 and 63 (reissuance of final paycheck with penalties) were supported by the evidence. The evidence set forth in those UMFs was not effectively refuted by Sawaked's evidence.

The trial court's order states: "Plaintiff's evidentiary objections set forth in the separate document are overruled." The order also states: "The court declines to rule on defendant's evidentiary objections because they are not material to the disposition of the motion."

"In granting or denying a motion for summary judgment or summary adjudication, the court need rule only on those objections to evidence that it deems material to its disposition of the motion. Objections to evidence that are not ruled on for purposes of the motion shall be preserved for appellate review." (Code Civ. Proc., § 437c, subd. (q).)

We review the trial court's rulings on evidentiary objections for abuse of discretion. (*Qaadir v. Figueroa* (2021) 67 Cal.App.5th 790, 803.) Where the court did not rule, we review the objections de novo. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535; *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451.) We conclude that Sawaked's objections to UMF Nos. 7, 22, 23, 24, 30, 62, and 63 (that they were vague, contained improper

4

legal conclusions, misstated the evidence, and lacked foundation) were properly denied.

Sawaked forfeited his challenge to UMF No. 10 (that the offer letter provided his compensation was subject to reductions for taxes and other required deductions), UMF No. 15 (that he was not eligible for a bonus for 2015), and UMF No. 31 (that Sawaked assigned projects to employees) because he did not dispute them in the trial court or object to the evidence supporting them. (Code Civ. Proc., § 437c, subds. (b)(3) & (5), (d); *Reid v. Google, Inc.*, *supra*, 50 Cal.4th at pp. 531-532.)

The court found that Sawaked's AMF No. 83 (that he had limited supervisory responsibilities) and AMF No. 84 (that he spent the majority of his time "producing deliverable work product") were "immaterial" because "undisputed evidence shows that the executive exemption applies." These findings were erroneous because the offered facts were relevant to the existence of the executive and administrative exemptions.

## C.    Exempt employees

Sawaked contends the trial court erred in granting summary judgment as to the first cause of action for overtime compensation (Lab. Code, § 510, subd. (a)), second cause of action for failure to pay all wages due upon termination (Lab. Code, §§ 201, 203), third cause of action for meal periods and rest breaks (Lab. Code, §§ 226.7, 512), and fourth cause of action for accurate itemized wage statements (Lab. Code, § 226, subd. (a)), based on the court's conclusion that he was an exempt employee. We conclude that the evidence did not establish he was exempt, and that the order granting summary judgment was therefore erroneous as to the first, second, and fourth causes of action.

5

"The Industrial Welfare Commission [IWC] may establish exemptions . . . for executive, administrative, and professional employees, if the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment." (Lab. Code, § 515, subd. (a).) The exemptions for executive and administrative employees are provided in IWC Wage Order No. 1-2001, codified in California Code of Regulations, title 8, section 11010, subdivision 1(A)(1) and (2). (See Lab. Code, §§ 1182.13, 1185.)

Atara contended that "the executive and/or administrative exemptions" applied. Executive and administrative employees are exempt from overtime (Lab. Code, § 515, subd. (a); Cal. Code Regs., tit. 8, § 11010, subds. 1(A), 3(A)), meal and rest breaks (Lab. Code, § 226.7, subd. (e); Cal. Code Regs., tit. 8, § 11010, subds. 1(A), 11, 12), and accurate itemized wage statements (Lab. Code, § 226, subd. (j); Cal. Code Regs., tit. 8, § 11010, subds. 1(A), 7).

Whether an employee comes within an exemption is an affirmative defense for which the employer bears the burden of proof. (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794-795.) "[W]e narrowly construe exemptions against the employer, 'and their application is limited to those employees plainly and unmistakably within their terms.'" (*Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662, 667.) We conclude that Atara did not establish either the executive or the administrative exemption on summary judgment.

6

**D. Executive exemption**

Atara contends that Sawaked came within the executive exemption. (Cal. Code Regs., tit. 8, § 11010, subd. 1(A)(1).) Sawaked admits the existence of several of the requirements for an executive exemption: that his "duties and responsibilities involve[d] the management of the enterprise" (Cal. Code Regs., tit. 8, § 11010, subd. 1(A)(1)(a)), he had the authority to hire or fire employees or recommend such action (subd. 1(A)(1)(c)), and he "customarily and regularly exercise[d] discretion and independent judgment" (subd. 1(A)(1)(d)).[3] He denies that he "customarily and regularly direct[ed] the work of two or more other employees" (subd. 1(A)(1)(b)), was "primarily engaged in duties which meet the test of the exemption" (subd. 1(A)(1)(e)), and received a "monthly salary" (subd. 1(A)(1)(f)). The trial court erred in concluding that the executive exemption was established because there were triable issues of fact whether he (1) directed the work of other employees during the relevant period and (2) was primarily engaged in exempt duties.

*1. Directing work of employees*

The executive exemption requires that the employee "customarily and regularly directs the work of two or more other employees." (Cal. Code Regs., tit. 8, § 11010, subd. 1(A)(1)(b).) The declaration of a supervisor stated that Sawaked supervised three named employees "[d]uring his employment," but did not give specific time periods.

---

[3] We decline to consider the attempt in Sawaked's reply brief to withdraw the concessions he made in his opening brief. (See *Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 55.)

7

UMF No. 29 stated: "From late 2016 through spring 2017, Plaintiff supervised at least three employees." This contention was insufficient because Atara made no assertion that he directed the work of any employees during the remaining periods of his employment.

In his deposition, Sawaked said he did not manage any employees until about a year after he started his employment. The second employee he supervised began working in early 2017, and the third employee around mid-2017. Although this evidence was not cited in Sawaked's response to Atara's separate statement, we exercise our discretion to consider it because it was included in the exhibits submitted on summary judgment. (See *Castillo v. Glenair, Inc.* (2018) 23 Cal.App.5th 262, 282-283.)

To establish an exemption, the employer is not required to "cover in week-by-week detail all periods in which [the employee] worked." (*Batze v. Safeway, Inc.* (2017) 10 Cal.App.5th 440, 477.) The trier of fact may "make reasonable inferences about a party's activities during the relevant period based on his or her activities in earlier and later periods, particularly where there is nothing to suggest the employee's duties and responsibilities changed significantly." (*Id.* at pp. 478-479.) But an inference that Sawaked supervised at least two employees for the entire period is not warranted because his undisputed deposition testimony showed the number of employees he supervised changed over time.

The limited evidence presented by Atara, and the undisputed evidence presented by Sawaked, established a triable issue of fact as to his supervision of employees.

## *2. Primary duty*

Sawaked contends there was a triable issue of fact as to whether he was "primarily engaged" in exempt duties.  (Cal. Code Regs., tit. 8, § 11010, subd. 1(A)(1)(e).)  "'[P]rimarily' means more than one-half of the employee's worktime."  (Lab. Code, § 515, subd. (e).)  "An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive."  (29 C.F.R. § 541.106(a) (2021).)

Sawaked's declaration stated:  "I estimate I spent only 30 to 35 percent of the work week in 'executive' roles (e.g., apportioning work, reviewing, and supervising work).  I spent the remaining 65-70 percent of my working time producing deliverable work product, like the results of my material compliance reviews, comparing results to predetermined range expectations, monitoring records and results from established processes and procedures, and reviewing tests and processes to ensure compliance with relevant safety regulations."

Although the phrase "producing deliverable work product" is not precise, Sawaked's declaration was admissible and sufficient to establish a triable issue of fact.  (*Golden West Baseball Co. v. Talley* (1991) 232 Cal.App.3d 1294, 1305, disapproved on other grounds in *Reid v. Google, Inc.*, *supra*, 50 Cal.4th 512, 526-527 [employee declared that "he at all pertinent times was acting in the course of his employment"]; but see *Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 994 [disregarding legal conclusions in declaration regarding employee or agency relationship]; *Energy Ins. Mutual Limited v. Ace American Ins. Co.* (2017) 14 Cal.App.5th 281, 300-301 [court not bound by legal conclusion in declaration whether defendant

9

provided "professional services"].) Atara presented evidence describing Sawaked's job duties but no evidence as to the portion of his time spent on executive duties. Because Atara did not meet its burden to establish the primary duties requirement of the executive exemption, the trial court erred in finding the exemption was established.

### 3. Salary basis

Although the finding of the executive exemption was erroneous based on Atara's failure to establish Sawaked's supervision of employees and primary duties, we discuss the third contested issue, that he was paid a salary, for the benefit of the trial court on remand. (Cal. Code Regs., tit. 8, § 11010, subd. 1(A)(1)(f).) The evidence on summary judgment established this requirement.

Sawaked's offer letter stated a starting salary of "$180,000 per year," "subject to adjustment pursuant to the Company's employee compensation policies in effect from time to time." It further stated, "All forms of compensation referred to in this letter agreement are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law." But the only adjustments to his salary were upward, including a bonus and a merit increase.

A federal regulation defines "salary basis" as pay of a "predetermined amount" for each pay period, "not subject to reduction because of variations in the quality or quantity of the work performed." (29 C.F.R. § 541.602(a) (2021)); see *Semprini v. Wedbush Securities, Inc.* (2020) 57 Cal.App.5th 246, 252.) Compensation by a monthly salary is not negated by the possibility of *increases* in pay. (*Boykin v. Boeing Co.* (9th Cir. 1997) 128 F.3d 1279, 1282.)

This case is unlike the cases upon which Sawaked relies in which pay was: based on commissions (*Semprini v. Wedbush Securities, Inc.*, *supra*, 57 Cal.App.5th 246), based on the number of hours worked (*Negri v. Koning & Associates* (2013) 216 Cal.App.4th 392, 395), subject to reduction for employee errors (*Takacs v. A.G. Edwards and Sons, Inc.* (S.D.Cal. 2006) 444 F.Supp.2d 1100, 1107-1110), subject to deductions for absences of less than a day (*Abshire v. County of Kern* (9th Cir. 1990) 908 F.2d 483, 486), or subject to unpaid disciplinary suspensions (*Klem v. County of Santa Clara* (9th Cir. 2000) 208 F.3d 1085, 1088). The theoretical possibility of a pay reduction here did not negate the salary basis because there was neither "an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." (*Auer v. Robbins* (1997) 519 U.S. 452, 461, superseded by regulation as stated in *Escribano v. Travis County* (5th Cir. 2020) 947 F.3d 265, 274.) The general language in the offer letter did not defeat the executive or administrative exemption because it did not "'effectively communicate[]' that deductions will be made in specified circumstances." (*Ibid.*)

**E.     Administrative exemption**

Atara contends that Sawaked was also exempt pursuant to the administrative exemption. (Cal. Code Regs., tit. 8, § 11010, subd. 1(A)(2).) Sawaked admits that some requirements of the administrative exemption were established: he "customarily and regularly exercise[d] discretion and independent judgment" (Cal. Code Regs., tit. 8, § 11010, subd. 1(A)(2)(b)), "perform[ed] under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge" (subd. 1(A)(2)(d)), and "execute[d]

11

under only general supervision special assignments and tasks" (subd. 1(A)(2)(e)).[4]  He denies that three other requirements were established:  "[t]he performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers" (subd. 1(A)(2)(a)(i)),  that he was "primarily engaged in duties that meet the test of the exemption" (subd. 1(A)(2)(f)),  and that he "earn[ed] a monthly salary" (subd. 1(A)(2)(g)).  As with the executive exemption, Atara established he was paid on a salary basis.  We conclude that Atara established Sawaked performed work related to management or general business operations but there was a triable issue as to primary duties.

### *1. Management or general business operations*

Atara established that Sawaked performed work "related to management policies or general business operations." (Cal. Code Regs., tit. 8, § 11010, subd. 1(A)(2)(a)(i).)  He testified in his deposition that he "managed the quality assurance group" and helped establish procedures.  The team he managed created, developed, and implemented new procedures and improved quality assurance systems.  When suppliers manufactured and tested products, Sawaked's team confirmed that the work had been done correctly and authorized the release of products to clinics.

Sawaked admitted that his job description generally "align[ed] with" his position.  It provided that "the key charter for the role is to design and implement quality systems within the clinical phase manufacturing and testing processes for the T Cell

_____

[4] Again, we decline to consider the contradictory assertion made for the first time in Sawaked's reply brief that he contests the second two of these requirements.

12

cellular therapy programs [to] ensure that selected contract manufacturing organizations are performing per Atara GMP compliance expectations." Listed "Responsibilities" included: "Develop, implement, and manage a quality management system," "Supports contact with the FDA, other regulatory authorities worldwide and collaborators regarding quality issues including field alerts, recalls or regulatory actions," "Manages GMP Inspections and audits from both regulatory authorities and collaborators," and "anticipate and resolve quality issues." Listed "Competencies" included "Project management skills." His duties included "Research industry guidelines."

The IWC definition of "administrative exemption" incorporates a regulation of the Wage and Hour Division of the United States Department of Labor that gives examples of "[w]ork directly related to management or general business operations." (Cal. Code Regs., tit. 8, § 11010, subd. 1(A)(2)(f), incorporating 29 C.F.R. § 541.201(b) (2021).) Undisputed evidence established that Sawaked performed work listed in the federal regulation, including "auditing," "research," "quality control," "safety and health," "personnel management," "government relations," and "legal and regulatory compliance."

### 2. Primary duty

As with the executive exemption, Atara failed to present evidence that Sawaked spent the majority of his work time on exempt duties. (Cal. Code Regs., tit. 8, § 11010, subd. 1(A)(2)(f).) His declaration that he spent 65 to 70 percent of his time "producing deliverable work product" created a triable issue of fact as to whether that work was on the "production" side of the administrative/production worker dichotomy." (*Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 821.)

13

Although the dichotomy is not "a dispositive test," it may be used as "an analytical tool." (*Harris v. Superior Court* (2011) 53 Cal.4th 170, 190.) There was a triable issue of fact as to the administrative exemption.

## F. Payment of overtime and bonuses upon termination

Sawaked was not entitled to receive bonuses for 2017 or 2018 because the offer letter he signed conditioned bonuses on his being employed on the payment date. (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 621; (*Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal.App.4th 509, 522-524.) But because there are triable issues of fact whether Sawaked was exempt from overtime pay, summary judgment should not have been granted regarding failure to immediately pay all wages due upon his termination (Lab. Code, § 201). Triable issues also exist whether Atara had a good faith belief that would negate penalties for a willful violation. (Lab. Code, § 203; *Diaz v. Grill Concepts Services, Inc.* (2018) 23 Cal.App.5th 859, 868.) Accordingly, we reverse summary judgment as to the second cause of action.

## G. Meal and rest breaks

Although it was not established that Sawaked was an exempt employee, summary judgment was properly granted regarding the third cause of action for failure to provide meal and rest breaks. It was undisputed that Sawaked had the opportunity to take the breaks and was not discouraged from doing so. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040; see Cal. Code Regs., tit. 8, § 11010, subds. 11(A) & (B) ["meal period may be waived by mutual consent of the employer and employee"], 12 ["employer shall authorize and permit all employees to take rest periods"].)

14

## H. Accurate wage statements

Because there were triable issues of fact as to whether Sawaked was exempt from the wage statement requirements, and whether Atara knowingly and intentionally failed to comply (Lab. Code, § 226, subds. (a), (e), & (j)), we reverse summary judgment as to the fourth cause of action.

## I. Dishonored check

Sawaked contends the trial court erred in granting summary judgment as to the fifth cause of action, intentional payment of wages with a dishonored check. (Lab. Code, §§ 203.1, 212.) This contention lacks merit.

On February 8, 2018, the day he was terminated, Atara gave Sawaked his final paycheck. When he later advised Atara it was dishonored by the bank, Atara apologized for its "clerical oversight" and issued a replacement check on March 7 that added 20 days' "waiting time penalties" of $14,123.08.

Sawaked stated that he "cannot assess whether the check contained the correct waiting time penalty." This does not constitute evidence that Atara failed to pay the proper penalty. Nor did any evidence negate Atara's statement that the error was unintentional.

## J. Breach of employment contract

Sawaked contends that Atara breached its employment contract. We are not persuaded. The sixth cause of action alleged that Atara breached agreements that "were partially written . . . in various handbook [sic], policies, and procedures," and "partially oral and implied." It alleged that Atara failed to comply with "provisions regarding performance evaluations, objective feedback, and his legitimate management role, and his compensation and benefits."

15

But Sawaked did not present evidence that any contractual terms were violated. The signed offer letter did not contain provisions regarding performance evaluations, feedback, or "his legitimate management role." It instead provided that it, and the Proprietary Information and Inventions Agreement, "constitute the complete agreement between you and the Company regarding the subject matter set forth herein. This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company (except for terms reserved to the Company's discretion)."

Sawaked's August 2017 midyear review included an "action plan" to improve areas in which he was "not meeting expectations." His supervisor, John Elvig, wrote, "I am committed to providing you coaching and support as you work on these development areas, however failure to show sustained improvement may result in disciplinary action up to and including termination of employment."

We need not decide if Elvig's statement constituted an enforceable contract (see *Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 463, disapproved on other grounds in *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 352, fn. 17) because there is no evidence it was violated. Sawaked contends that "Atara offered no evidence demonstrating any such coaching or support took place." But he acknowledged in his declaration and deposition that he met with Elvig several times in the following weeks to receive feedback and discuss his progress regarding the action plan. Sawaked received written "Action Plan Updates" in January 2018 that included several months of comments. Sawaked's later supervisor, Tara Raab, stated in her

16

declaration that she met with Sawaked on three occasions regarding his progress in the action plan. Sawaked does not deny that these discussions with Raab occurred.

Sawaked contends that "Atara promised to give him management authority commensurate with his position." But he cites no evidence to support this contention. His declaration included assertions that his supervisor arguably undermined his authority, but he did not show that this breached his contract.

Finally, Sawaked claims that Atara "secretly" changed the terms of the bonus agreement to require that he be employed at the time bonuses were distributed. But the offer letter signed by Sawaked at the beginning of his employment clearly provided that he "must be employed on the payment date in order to earn the bonus."

In summary, Sawaked did not present evidence to show a contested issue as to whether an express or implied contract was violated.

## DISPOSITION

The order granting summary judgment is reversed as to the first, second, and fourth causes of action. The judgment is otherwise affirmed. Appellant shall recover his costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.          PERREN, J.

17

Henry J. Walsh, Judge

Superior Court County of Ventura

————————————————

Employment Rights Attorneys and Richard D. Schramm for Plaintiff and Appellant.

Fisher & Phillips, Kristen J. Nesbit and Danielle S. Krauthamer for Defendant and Respondent.